UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Injah Tafari  #89A4807,

                       Plaintiff,                  **Hon. Hugh B. Scott**

                                                01CV0841

                          v.                    **Decision**
                                                    **&**
                                                 **Order**

Sheldon Stein, et al.

                       Defendants.
_____

Before the Court is the defendants' motion for summary judgment (Docket No. 39) and Plaintiff's motion for appointment of counsel (Docket Nos. 73 and 74).[1]

**BACKGROUND**

On October 19, 2001, Plaintiff, Injah Tafari ("Plaintiff"), then incarcerated at Southport Correctional Facility,[2] commenced this action *pro se*, seeking relief under 42 U.S.C. § 1983 and

---

[1] The parties have consented to proceed before the undersigned as Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Docket No. 43). The defendants' motion for summary judgment was revived following the plaintiff's motion for reconsideration (Docket No. 63).  This Court granted the plaintiff's motion and ordered the defendants to reply to the plaintiff's opposition (Docket No. 66).  The defendants filed a reply (Docket No. 71), and the plaintiff served a sur-reply (Docket No. 75).

[2] The plaintiff is currently an inmate of Five Points Correctional Facility, Romulus, New York.  See Plaintiff's letter to this Court dated April 12, 2007.

New York State tort law, against defendants Greenhaven Correctional Facility ("Greenhaven") Dr. Norman H. Selwin, Dr. Harry Mamis; Lakeview Correctional Facility ("Lakeview") Dr. Jose Galindo , Dr. Jacob Piazza; Southport Correctional Facility ("Southport") Dr. John Alves; Clinton Correctional Facility ("Clinton")  Kang Lee and I. Ellen; Attica Correctional Facility ("Attica")  Sheldon Stein, Robert Takos and Stephen Laskowski; and New York State Department of Correctional Services ("DOCS") Medical Director Lester Wright and Commissioner Glenn S. Goord, all sued in their personal and official capacity.[3]  (Docket No. 1) The plaintiff claims that the defendants violated his Eight Amendment right to be free from cruel and unusual punishment by failing to provide adequate medical treatment for the pain caused by a broken surgical screw in his left shoulder, or alternatively that the defendants' failure to act constituted negligence.  (Compl. ¶¶ 44, 45, 46.)

The plaintiff alleges that in 1984, while under the custody of DOCS,  he underwent a surgery to repair his left shoulder, which required the insertion of a surgical screw into the shoulder.  (Compl. ¶ 15.)  On November 16, 1998, Dr. Mamis sent the plaintiff, then incarcerated at Greenhaven, to an outside orthopedic specialist based on the plaintiff's complaints that he was experiencing pain in his left shoulder.  (Compl. ¶ 16.)  In his request for consultation, Dr. Mamis stated that the plaintiff's x-rays showed that the screw was broken through its mid-portion.  (Pl.'s Ex. I-7 (Docket No. 57.))  The orthopedic specialist noted that the plaintiff  "retained (painful) hardware," and further stated "recommend arthroscopy of left shoulder, removal of screw . . . recommend surgery."  (Compl. ¶ 16; Pl.'s Ex. I-7 (Docket No. 57.)) The plaintiff was then

---

[3] Plaintiff initially moved for *in forma pauperis* status, which was granted.  The Court, in granting that status, dismissed certain claims and defendants from the Complaint (Docket No. 6).

transferred to Lakeview on January 20, 1999. (Compl. ¶ 17.) While there, an x-ray ordered by Dr. Galindo showed that "the screw is fractured approximately in half." (Pl.'s Ex. I-8 (Docket No. 57.)) Another x-ray ordered by Dr. Piazza showed "a broken, single, orthopedic screw . . . in the inferior glenoid rim." (Pl.'s Ex. I-9 (Docket No. 57.)) On May 13, 1999, the plaintiff was sent to Southport; then to Clinton on June 5, 2000. (Compl. ¶ 17.) An x-ray requested by Dr. Kang Lee while the plaintiff was detained at Clinton showed "a screw through the inferior glenoid which is fractured." (Pl.'s Ex. I-11 (Docket No. 57.)) On October 2, 2000, the plaintiff was transferred to Attica, where an x-ray ordered by Dr. Laskowski again showed "a fractured screw along the inferior glenoid fossa region." (Pl.'s Ex. I-12 and I-13 (Docket No. 57.)) the plaintiff was then sent back to Southport on July 20, 2001, without surgery being performed. (Compl. ¶ 17.) Thereafter, the plaintiff filed this Complaint seeking an injunction directing the defendants to arrange for a surgery to remove the broken screw from the plaintiff's shoulder, and to provide physical therapy or other follow-up treatment; the plaintiff also seeks compensatory and punitive damages. (Compl. at 13-16.)

This Court previously granted the defendants' motion based upon the rescinding of the plaintiff's *in forma pauperis* status (Docket No. 58), ("IFP"). Subsequently, the plaintiff filed a motion seeking reconsideration of the summary judgment Order (Docket No. 63). The defendants withdrew the portion of their motion attacking Tafari's *in forma pauperis* status. The Court vacated the order dismissing the complaint and directed the defendants to file a reply to the plaintiff's initial Declaration. Id. The plaintiff also filed a motion to amend the complaint (Docket No. 68). The defendants filed a reply to the plaintiff's opposition to their summary judgment motion (Docket No. 71, Defs.'Reply Memo.), also opposing the plaintiff's request to

amend the complaint. The plaintiff filed a reply in which he withdrew his motion to amend the complaint. (Docket No. 75). As such, the Court need not address the issues relating to the motion to amend the complaint.

In the motion presently before the Court, individual defendants Selwin, Mamis, Galindo, and Piazza seek summary judgment on the plaintiff's §1983 medical indifference claims on the basis that plaintiff failed to exhaust administrative remedies relative to such claims (Docket No. 71, Defs.' Reply Memo. at 2); all defendants further argue that the Eleventh Amendment's doctrine of sovereign immunity prohibits § 1983 and state law negligence claims from being brought against state employees in their official capacity (Docket No. 71, Defs.'Reply Memo. at 17); moreover, all defendants contend that this Court lacks subject matter jurisdiction on the negligence claims brought against them in their personal capacity (Docket No. 71, Defs.'Reply Memo. at 18); lastly, all defendants argue that any claim for injunctive relief is moot because at the time he filed his reply declaration, the plaintiff had already been transferred to the Auburn Correctional Facility ("Auburn"), a different facility from the ones mentioned in the Complaint (Docket No. 71, Defs.'Reply Memo. at 19).

The plaintiff argues that genuine issues of material fact exist as to whether he has exhausted administrative remedies as to his §1983 claims and, as such, the defendants' motion for summary judgment should be denied (Docket No. 75, Pl.'s Reply Decl. at 5-6).[4] Further, the plaintiff moves the Court to appoint counsel to represent him in this action (Docket Nos. 73 and 74).

---

[4] In his reply declaration in opposition to the defendants' motion, the plaintiff does not address the defendants' other grounds for summary judgment.

As discussed below, the record before the Court establishes that: (1) the plaintiff has failed to exhaust administrative remedies as to his § 1983 claims against defendants Selwin, Mamis, Galindo, and Piazza; (2) the Eleventh Amendment bars § 1983 and state law negligence claims for money damages against all defendants in their official capacity; (3) New York law precludes pendent state law claims for negligence against all defendants in their personal capacities; and (4) any claim for injunctive relief is moot.

## DISCUSSION

**Motion for Summary Judgment**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See <u>Trans Port, Inc. v. Starter Sportswear, Inc.</u>, 964 F.2d 186, 188 (2d Cir. 1992) (citing <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991). The Court must draw all reasonable inferences in favor of the non-moving party and grant summary judgment only if no reasonable trier of fact could find in favor of the non-moving party. See <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991); <u>Howley v. Town of Stratford</u>, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." <u>Lendino v. Trans Union Credit Information, Co.</u>, 970 F.2d 1110, 1112 (2d Cir. 1992) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

<u>General Electric Company v. New York State Department of Labor</u>, 936 F.2d 1448, 1452 (2d

Cir. 1991) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "The non-moving party must come forward with enough evidence to support a jury verdict . . . and the . . . motion will not be defeated merely . . . on the basis of conjecture or surmise." <u>Trans Sport</u>, 964 F.2d at 188 (<u>citing</u> <u>Bryant v. Maffucci</u>, 923 F.2d at 982). If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party." <u>Glazer v. Formica Corp.</u>, 964 F.2d 149, 154 (2d Cir. 1992) (<u>citing</u> <u>Dusanenko v. Maloney</u>, 726 F.2d 82 (2d Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. <u>See</u> <u>Burger King Corp. v. Horn & Hardart Co.</u>, 893 F.2d 525, 528 (2d Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc.</u>, 235 F.3d 53 (2d Cir. 2000) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**Exhaustion of Administrative Remedies as to Individual Defendants Selwin, Mamis, Galindo, and Piazza.**

**The PLRA's Exhaustion Requirement.**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." <u>Id.</u> It is well settled that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

6

some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002), rev'g, Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000).  In enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials an opportunity to deal with inmates complaints through internal processes.  Id. at 534-25.  The act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court."  Id. at 528.  The intent of the PLRA is to restrict inmate litigation where they had, but failed, to use all of their internal administrative remedies before commencing a federal civil rights action.  See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001); Evan v. Manos, 336 F.Supp.2d 255, 258 (W.D.N.Y. 2004) (Larimer, J.)  Further, the statute requires a prisoner to exhaust the grievance procedures offered regardless of the type of relief they provide, since "one 'exhausts' processes, not forms of relief."  Booth v. Churner, 532 U.S. 731, 739 (2001) (exhaustion mandated even when the inmate sought monetary relief and the administrative process offered none); Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004).

There is often a dispute as to whether a plaintiff has exhausted his administrative remedies.  In the wake of Porter, the Second Circuit has articulated a three-part inquiry for district courts to follow when "a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a)."  Hemphill v. State of New York, 380 F.3d 680, 686 (2d Cir. 2004).  Specifically, the Court must ask:

> whether administrative remedies were in fact 'available' to the prisoner.  The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.  If the court finds that

administrative remedies were available to the plaintiff, and that the
defendants are not estopped and have not forfeited their nonexhaustion
defense, but that the plaintiff nevertheless did not exhaust administrative
remedies, the court should consider whether special circumstances have
been plausibly alleged that justify the prisoner's failure to comply with
administrative procedural requirements.

Hemphill, 380 F.3d at 686 (internal citations and quotations omitted). Special circumstances justifying an inmate's failure to exhaust include a reasonable misunderstanding of the grievance procedure. Hemphill, 380 F.3d at 689; Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).

Moreover, the Second Circuit has observed that administrative remedies may be "informally" exhausted where "the regulations advise inmates 'to attempt to resolve a problem on [their] own' before resorting to formal procedures." Hemphill, 380 F.3d at 682 n. 4 (quoting 7 N.Y.C.R.R. § 701.3(a)). "An inmate who obtains a favorable resolution of his complaint through informal processes has exhausted available administrative remedies under the DOCS scheme." Hemphill, 380 F.3d at 682 n. 4 (citing Marvin v. Goord, 255 F.3d 40, 43 n.3 (2d Cir. 2001) (per curiam)).

Finally, it is well established in the Second Circuit that total exhaustion is not necessary with respect to § 1983 complaints. Ortiz v. McBride, 380 F.3d 649, 663 (2d Cir. 2004). Where a complaint includes both exhausted and unexhausted claims, the Court may dismiss the unexhausted claims and proceed with the exhausted claims. In such cases, the Second Circuit contemplated that in the ordinary case the Court would proceed to decide the exhausted claims "without waiting for the plaintiff to attempt to exhaust available remedies with respect to the dismissed claims." Ortiz, 380 F.3d at 663.

**DOCS' Grievance Procedure.**

The rules and regulations of New York State Department of Correctional Services ("DOCS") provide that inmates within the custody of DOCS may avail themselves of an administrative grievance procedure called the Inmate Grievance Program ("IGP"). See 7 N.Y.C.R.R. Part 701 (2006).[5] The IGP provides a three-step process whereby an inmate's complaints are first reviewed by the Inmate Grievance Resolution Committee ("IGRC"), a facility committee comprised of elected inmate representatives and appointed staff members. 7 N.Y.C.R.R. § 701.4. To file a grievance with the IGRC, an inmate must initially:

> submit a complaint to the [grievance] clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form (form #2131). If this form is not readily available, a complaint may be submitted on plain paper. . . . *Note*: Exceptions to this time limit or any appeal time limits may be approved by IGP supervisor under section 701.6(g) of this part.

7 N.Y.C.R.R. § 701.5(a)(1).[6] To obtain an exception to the time limit for filing a grievance, an inmate must submit a request in writing to the grievance clerk. 7 N.Y.C.R.R. § 701.6(g)(1)(i). Thereafter,

> [t]he IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances (*e.g.*, timely attempts to resolve a complaint informally by the inmate, etc.). An exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence.

7 N.Y.C.R.R. § 701.6(g)(1)(i)(a).

---

[5] Some portions of the regulations have been repealed and amended effective on June 28, 2006. Since the amendments made are not material to the disposition of the issues in this case, the provisions cited herein reflect the more recent version of the regulation.

[6] "Within fourteen working days of an alleged occurrence" under the regulations as effective at the time of the facts alleged (Docket No. 71, Defs.'Reply Memo. at 4).

If an inmate is not satisfied with the IGRC's resolution of the complaint, he or she may file an appeal with the superintendent within seven calendar days after receipt of the IGRC's written response. 7 N.Y.C.R.R. § 701.5(c)(1). Finally, an inmate may appeal the superintendent's action to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the superintendent's written response to the grievance. 7 N.Y.C.R.R. § 701.5(d)(1).

### Plaintiff's Exhaustion as to Individual Defendants Selwin, Mamis, Galindo, and Piazza.

In the instant case, defendants Selwin, Mamis, Galindo, and Piazza argue that the plaintiff has failed to exhaust administrative remedies as to the § 1983 medical indifference claims brought against them. The defendants point out that the plaintiff's claims against Selwin and Mamis arise in a period of time between November 1998 to on or about January 20, 1999, while the plaintiff was incarcerated at Greenhaven; and, that the plaintiff's claims against Galindo and Piazza arise during the plaintiff's incarceration at Lakeview, between January 20, 1999 to on or about May 13, 1999. The defendants allege that the plaintiff has not filed any grievances against them while at Greenhaven or Lakeview. In support of their allegations, the defendants submit the Declaration of Thomas G. Eagen, Director of the IGP for DOCS (Docket No. 40), attesting that a search of IGP records does not reveal any formal grievance filed by the plaintiff while at Greenhaven or Lakeview regarding the medical care provided to the plaintiff by Selwin, Mamis, Galindo, and Piazza.

In opposition, the plaintiff argues that he has exhausted administrative remedies by first attempting to resolve his grievances informally through the medical department at both

Greenhaven and Lakeview.  Specifically, the plaintiff alleges that he made repeated complaints regarding the pain that the broken screw was causing in his shoulder and requested surgery to have that screw removed.  (Docket No. 75, Pl.'s Reply Decl. at 4.)  Further, the plaintiff submits that he later presented his grievances in a formal manner, and points to several letters and grievance complaints where he stated that he was experiencing excruciating pain in his left shoulder and requested surgery to remove the broken screw.  (Pl.'s Ex. J-1 – J-58 (Docket No. 57.))  The plaintiff relies on DOCS Directive 4040 § V(A)(1), codified at 7 N.Y.C.R.R. § 701.6(g), providing for an extension to the time limit for filing a complaint, for the argument that his attempts to resolve his grievances informally constitute mitigating circumstances justifying his late filing of several grievance complaints though the formal grievance procedure.

There is no merit to the plaintiff's assertions that he has either informally or formally exhausted his administrative remedies with respect to the medical indifference claims against defendants Selwin, Mamis, Galindo, and Piazza.  First, the Court finds that the plaintiff's attempts to resolve his grievances informally did not exhaust administrative remedies because the plaintiff, contrary to his assertions, has not availed himself of DOCS Directive 4040 § V(A)(1); 7 N.Y.C.R.R. § 701.6(g).  Under DOCS Directive 4040 § V(A)(1), an inmate must actively request the IGP supervisor to grant an exception to file a late complaint; a late filing will be allowed based on mitigating circumstances such as an inmate's previous timely attempts to resolve a complaint informally.  Here, the plaintiff has not alleged nor provided any evidence that he requested and received permission by the supervisor to file a late complaint.

Moreover, The plaintiff filed his first formal grievance complaint lamenting pain in his shoulder and requesting surgery on February 21, 2001, while he was incarcerated at Attica,

almost two years after having been transferred out of Lakeview. (Pl.'s Ex. J-8 – J-18 (Docket No. 57.)) In that grievance, the plaintiff did not mention any of the individual moving defendants. The plaintiff filed another grievance dated April 19, 2002, when he was confined at Southport. In that grievance, the plaintiff mentioned Selwin, Mamis, Galindo, and Piazza, while recounting the history of his complaints about his shoulder pain. (Pl.'s Ex. J-33 – J-40 (Docket No. 57.)) The claims in that grievance, however, focused on the alleged failures of Southport's medical staff and was filed almost three years after the plaintiff had ceased to be under the care of Selwin, Mamis, Galindo, and Piazza.[7] Inasmuch as that grievance mentions Selwin, Mamis, Galindo, and Piazza only incidentally and it was filed well past the "21 calendar days," 7 N.Y.C.R.R. § 701.5(a)(1), or "14 working days" under the previous regulations, see Defs.'Reply Memo. at 4, of any alleged occurrence involving these individual defendants, the plaintiff has failed to show that he formally exhausted his remedies as mandated by the PLRA. See Williams v. Comstock, 425 F.3d 175 (2d Cir. 2005) (prisoner failed to exhaust PLRA's administrative remedies when he filed a grievance in 2003 against a DOCS nurse for failing to provide adequate medical care at the time he had a stroke in 2001).

The plaintiff's informal exhaustion argument fails also under the Second Circuit's analysis of 7 N.Y.C.R.R. § 701.3(a). Hemphill, 380 F.3d at 682. Section 701.3(a) encourages inmates to attempt to resolve a problem informally before resorting to the formal grievance procedure. Consequently, the Second Circuit held that an inmate who obtains a positive

---

[7] The IGRC recommended that the grievance be denied (Pl.'s Ex. J-41 (Docket No. 57.)) Thereafter, the superintendent denied the plaintiff's grievance based on the fact that in January 2001, the plaintiff was seen by a specialist who recommended the broken screw did not have to be removed. (Pl.'s Ex. J-42 (Docket No. 57.)) The plaintiff then appealed to CORC which again denied the plaintiff's request for surgery. (Pl.'s Ex. J-43 (Docket No. 57.))

outcome through informal processes will be deemed to have exhausted his administrative remedies. Hemphill, 380 F.3d at 682. Here, the plaintiff has not alleged that his informal grievances ever resulted in a statement by the defendants that a surgery would be scheduled for him. Moreover, the record does not reflect that the moving defendants ever agreed with the plaintiff that he needed a surgery.

Having found that the plaintiff has not exhausted administrative remedies either informally or formally, the Court applies the three-step analysis laid out in Hemphill to determine whether the plaintiff was justified in failing to meet the PLRA's exhaustion requirement. In the instant case, neither party disputes that a formal procedure existed for an inmate to seek relief for a grievance at DOCS's facilities and that those processes were available to the plaintiff while at both Greenhaven and Lakeview. Further, the plaintiff does not allege that defendants prevented him from availing himself of the grievance procedure. Inasmuch as the defendants have raised nonexhaustion as a defense in their summary judgment motion, the issue turns onto whether there were 'special circumstances' that justified the plaintiff's failure to file a grievance complaint against these defendants. In his reply declaration, the plaintiff has not alleged any facts or events that prevented him from filing a formal grievance while at Greenhaven and Lakeview. Moreover, the plaintiff's grievance complaints filed while at Attica and Southport suggest that the plaintiff was familiar with DOCS' grievance procedures but did not resort to them while at Greenhaven and Lakeview.

In light of the above, the Court concludes that the plaintiff has not demonstrated that a material question of fact exists as to whether he has exhausted administrative remedies either informally or formally, or whether he was justified in failing to do so. Accordingly, summary

judgment is granted on the § 1983 medical indifference claims with respect to defendants Selwin, Mamis, Galindo, and Piazza.

A determination that the plaintiff has failed to exhaust certain claims does not warrant dismissal of the complaint in its entirety. See Ortiz, 380 F.3d at 663. Therefore, the Court will not dismiss those claims where exhaustion has not been raised as a defense.


**Eleventh Amendment Bar to § 1983 and Negligence Claims Against Defendants in Their Official Capacity.**

All defendants contend that the Eleventh Amendment protects state officials from § 1983 and state law negligence claims brought against them in their official capacity. The plaintiff does not oppose the defendants' arguments. To the extent that the plaintiff seeks money damages from the defendants in their official capacities, the Eleventh Amendment bars such claims.

It is well established that the Eleventh Amendment's sovereign immunity doctrine generally bars recovery of money damages from a State entity. Kentucky v. Graham, 473 U.S. 159, 167 (1985); Dunn v. Carrier, 137 Fed.Appx. 387, 398 (2d Cir. 2005) (unpublished). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Graham, 473 U.S. at 165-66 (citing Monell v. City of New York Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55. (1978)). Considering civil rights actions brought under § 1983, the Supreme Court has held that this federal statute does not provide a right to recover damages from either a State or its officials in their official capacities.

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).[8]

Likewise, the Eleventh Amendment bars federal suits for damages against a State or its officials in their official capacity based on a state law violation. Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 120, 21 (1984) (neither pendent jurisdiction nor any other basis for jurisdiction may override the Eleventh Amendment).

Accordingly, the defendants are entitled to summary judgment on the § 1983 and state law negligence claims for money damages brought against each of the individual defendants in their official capacity.

**Pendent State-Law Claims Against Defendants in Their Personal Capacities.**

All defendants contend that the plaintiff's pendent state law claims for negligence are barred by New York Corrections Law § 24 which protects all employees of DOCS sued for damages in their personal capacities. The plaintiff does not oppose the defendants' arguments.

Section 24 provides in pertinent part that:

> (1) [n]o civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the [Department of Correctional Services], in his personal capacity, for damages arising out of any act done or failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> (2) Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of an officer or employee of the [Department of Correctional Services] shall be brought and

---

[8] It should be noted, however, that the Eleventh Amendment does not bar damages actions against state officials sued in their personal capacities. Hafer v. Melo 502 U.S. 21, 27-31 (1991).

maintained in the court of claims as a claim against the state.

N.Y. Corr. Law § 24(1)-(2) (2007).

The Second Circuit considered whether § 24 would equally bar personal-capacity suits against DOCS employees brought in federal court. Baker v. Coughlin, 77 F.3d 12 (2d Cir. 1996). Reasoning that a federal court acts essentially as a state court when it addresses pendent state law claims, the Second Circuit held that "[i]f a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court . . . must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." Baker, 77 F.3d at 15. Here, the restrictions set by the state prescribe that the plaintiff may file the relevant claims only in the New York Court of Claims. N.Y. Corr. Law § 24(2). This Court is bound by Baker to apply § 24 as it would be applied in state court and thus cannot entertain the plaintiff's negligence claims. See Ruffin v. Deperio, 97 F.Supp.2d 346 (W.D.N.Y. 2000) (C.Heckman, M.J.) (granting defendants' motion for summary judgment on pendent state law claims for negligence and medical malpractice against defendants in their personal capacities).

Accordingly, the defendants are entitled to summary judgment on the state law claims for negligence brought against each of the individual defendants in their personal capacity.

**Injunctive Relief**.

The defendants assert that the plaintiff's claims for injunctive relief are moot against all defendants employees of Lakeview, Greenhaven, Southport, Clinton, and Attica, because at the time he filed his reply declaration, the plaintiff was confined at Auburn. The plaintiff does not directly address this issue, but states that following an examination by an orthopedic surgeon on

August 25, 2004, the medical personnel at Auburn arranged for the plaintiff to undergo surgery and have the broken screw removed from his left shoulder.  (Docket No. 75, Pl.'s Reply Decl. at 2.)  By letter dated April 12, 2007, the plaintiff has advised the Court that his surgery for removal of the broken screw was scheduled to take place in May 2007.  More recently, by letter dated May 21, 2007, the plaintiff has notified the Court that his surgery was successfully completed at Mount Vernon Hospital on May 14, 2007.

It is well settled that "for a federal court to retain jurisdiction over a case, an actual controversy must exist 'at all stages of review, not merely at the time the complaint is filed.'" Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (quoting Preiser v. Newkirk, 422 U.S. 395 (1975).  A claim is deemed moot where "the problem sought to be remedied has ceased."  Prins, 76 F.3d at 506.

Inasmuch as the surgery requested by the plaintiff has been performed, the plaintiff's claim for injunctive relief is moot.  The plaintiff, however, has a right to go forward with his claims for damages caused by the defendants' alleged medical indifference to the plaintiff's complaints of pain and requests for surgery to remove the broken screw.  Therefore, at this time the plaintiff's § 1983 medical indifference claim survives as against the following defendants in their personal capacity:  John Alves, Kang Lee, I. Ellen, Sheldon Stein, Robert Takos and Stephen Laskowski; DOCS Medical Director Lester Wright and Commissioner Glenn S. Goord.

**Appointment of Counsel**

The plaintiff has filed a motion for the appointment of counsel. The motion is granted. The Court appoints **Robert J. Schreck , Esq.**  as counsel for the plaintiffs, *pro bono*, pursuant to

28 U.S.C. § 1915(d).  <u>Hodge v. Police Officers</u>, 802 F.2d 58 (2d Cir. 1986), <u>Cooper v. A. Sargenti Co.</u>, 877 F.2d 170 (2d Cir. 1989).  The Clerk of the Court is directed to make copies of the filed documents in this case and forward them to Robert J. Schreck, Esq.   A conference will be held with counsel on **May 27, 2008  at 2:30 p.m.**  at 414 U.S. Courthouse, 68 Court Street, Buffalo, New York, to discuss the status and scheduling of this matter.

      So Ordered.

                                                  */s/ Hugh B. Scott*
                                            United States Magistrate Judge
                                            Western District of New York

Buffalo, New York
May 5, 2008