UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Injah Tafari  #89A4807,
                       Plaintiff,

                                **Hon. Hugh B. Scott**

                                01CV0841

                     v.

                                **Decision
                                & Order**

Sheldon Stein, et al.
                       Defendants.

       Before the Court is the plaintiff's motion for reconsideration of this Court's May 5, 2008 Decision & Order granting summary judgment to defendants Selwin, Mamis, Galinda and Piazza based upon the plaintiff's failure to exhaust administrative remedies as against those individuals. (Docket No. 80).

       On October 19, 2001, Plaintiff, Injah Tafari ("Plaintiff"), then incarcerated at Southport Correctional Facility, commenced this action *pro se*, seeking relief under 42 U.S.C. § 1983 and New York State tort law, against various medical personnel at numerous correctional facilities based upon their alleged deliberate indifference to his medical needs by failing to provide adequate medical treatment for the pain caused by a broken surgical screw in his left shoulder. (Compl. ¶¶ 44, 45, 46.)   In a May 5, 2008 Decision & Order, the Court dismissed the complaint as against defendants Selwin, Mamis, Galindo, and Piazza on the grounds that the plaintiff failed to exhaust administrative remedies relative to such claims as against those defendants. (Docket No. 77).

       The plaintiff seeks reconsideration in light of Jones v. Boch, 549 U.S. 199 (2007), which suggests that, under some circumstances, a plaintiff need not identify each defendant they later

1

sue in their initial grievances. The Supreme Court held that:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

Jones, 549 U.S. at 922-923.

  Neither party has provided the Court with authority as to the requirements of the grievance procedure implemented in the New York State correctional system.[1] In Varela v. Demmon, 491 F.Supp.2d. 442, 449 (S.D.N.Y.2007), the court examined the New York State grievance procedures and determined that New York's procedures make no mention of naming particular officials as a prerequisite to proper exhaustion. Id. (citing 7 N.Y.C.R.R. § 701.5(a)(2)).

---

[1] Indeed, although provided an opportunity to do so, the defendants have failed to file any response to the instant motion. In any event, New York State provides inmates with a grievance procedure to follow by which inmates may file complaints and appeal adverse decisions. N.Y. Correct. Law § 139; N.Y. Comp.Codes R & Regs. 7 §§ 701.1 et seq. (N.Y.CRR). The regular Inmate Grievance Program (IGP) consists of a three-tiered process. Hemphill v. State of New York, 380 F.3d 680, 682 (2d Cir.2004). The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). Id. §§ 701.5(a)(1) and (b).FN26 An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. Id. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). Id. § 701.5(d). There is also an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 NYCRR § 701.8. Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. Id. § 701.8(a). The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. Id. § 701.8(b). Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. Id. §§ 701.8(c); 701.8(d)(1)-(d)(3). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. Id. § 701.8(h). A similar "special" procedure is provided for claims of discrimination against an inmate. Id. § 701.9.

See also <u>Colon v. Goord</u>, 2008 WL 783364 (N.D.N.Y. 2008).

However, the discussion in <u>Jones</u> and other cases dealing with the issue of whether or not it is necessary to name each defendant in the administrative grievance involve circumstances where the underlying claim is a discrete incident at a single correctional facility. In the instant case, the plaintiff asserts claims against different sets of medical personnel for failing to properly address his medical needs at different times and at different correctional facilities. To prevail on a constitutional claim of deliberate medical indifference, a plaintiff must prove that he suffered from an objectively serious medical condition, which the defendants knew of and deliberately disregarded. <u>Green v. Senkowski</u>, 2004 WL 1292786, *1 (2nd Cir. 2004) citing <u>Chance</u>, 143 F.3d at 702 (collecting cases). A serious medical condition is one that may result in death, degeneration, or "chronic and substantial pain." <u>Id</u>.; see <u>Hathaway I</u>, 37 F.3d at 66. This standard contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Nance v. Kelly</u>, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). A serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Chance</u>, 143 F.3d at 702. To satisfy the subjective prong of the test, prison officials must have acted with a sufficiently culpable state of mind, i.e., deliberate indifference. Plaintiff must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment. See <u>Estelle</u>, 429 U.S. at 104-05. See also <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "[T]he subjective

element of deliberate indifference 'entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." ' Hathaway II, 99 F.3d at 553 (quoting Farmer, 511 U.S. at 835). Accordingly, subjective recklessness can satisfy the deliberate indifference standard where "the official has actual knowledge that the prisoner faced a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Finally, it is well settled that a plaintiff asserting an Eighth Amendment claim based upon inadequate medical care must establish deliberate indifference for each individual defendant against whom the claim is asserted. Brock v. Wright, 315 F.3d 158, 164 (2d Cir.2003)(stating that plaintiff must show deliberate indifference on the part of a "particular defendant").

An individual's medical condition, and the appropriate response thereto, is subject to change over time.  Whether or not the plaintiff was experiencing pain, the amount of pain, and the debilitating nature of the condition, are not necessarily static.  An individualized assessment and finding of fact is required with respect to these issues as against each defendant against whom such deliberate indifference claims are asserted. Thus, the fundamental purposes of the grievance requirement would not be served if a grievance filed at one facility regarding treatment obtained at that facility was said to be sufficient to exhaust administrative remedies relating to a separate, even though similar, claim asserted against different medical personnel for a different time period and at a different correctional facility.  Jones does not purport to negate the principle that the purposes of exhaustion must be served. Jones, 127 S.Ct. at 923 ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it

administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."). "A grievance directed at a particular individual at a particular institution is proof only as to that particular incident, individual and institution." Florer v. Johnson, 2007 WL 2900179, *4 (W.D.Wash. 2007).[2] See also Price v. Caruso, 2008 WL 441254 (W.D.Mich. 2008)(Jones does not excuse failure to name an individual defendant in grievance where plaintiff was aware of identity of the defendant and named other individuals in the grievance).

In light of the above, the plaintiff's motion for reconsideration of the May 5, 2008 Decision & Order granting summary judgment to defendants Selwin, Mamis, Galindo, and Piazza is DENIED.

**The trial in this matter remains scheduled for September 22, 2008.** Jury selection shall commence at 9:00 a.m. on that date with the trial to follow immediately. Pretrial statements identifying a list of witnesses; a list of exhibits and proposed jury instructions shall be filed by September 15, 2008. The pretrial statements shall also advise the Court of any anticipated evidentiary disputes or other *in limine* issues.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
August 15, 2008

---

[2] Unlike the present case, the plaintiff was allowed to proceed with his special diet claim against all defendants in Florer because the determination regarding his request for a Kosher diet was made by the *state food program manager* and would necessarily remain the same at each facility. Analogous facts are not present in the instant case.

5